IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PET PRODUCT INNOVATIONS, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) ) | 11 C 7182 |
| | ) | Judge Virginia M. Kendall |
| THE PAW WASH, LLC, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Paw Plunger is a cylindrical mug shaped container lined with bristles. To wash dirty dog paws, one inserts the paw into the cylinder and, using a plunging-like motion, removes the dirt. The Paw Wash is nearly identical in design–it is a also a cylindrical container, though it more closely resembles a thermos, and it too is lined with bristles. The Paw Wash also cleans dirty paws by applying a plunging-like motion to dirty dog feet. The two compete against each other in the market for dog foot bathing products. After protracted, multi-round litigation between The Paw Wash and Paw Plunger, LLC in the United States District Court for the Western District of Missouri concerning the validity of a patent held by The Paw Wash, judgment was entered against Paw Plunger, LLC. In a Stipulated Order, the Missouri court found that The Paw Wash's patent was valid and enforceable, and later issued a permanent injunction enjoining Paw Plunger, LLC from continuing to manufacture and sell their Paw Plunger product. Paw Plunger, LLC subsequently dissolved and sold all of its assets to Pet Product Innovations, a newly formed entity. Pet Product Innovations now manufactures and sells the Paw Plunger. Zeus & Company Pet Supply

1

Distributions, Inc. is the product's exclusive distributor. Pet Product Innovations, LLC and Zeus brought suit in this Court against The Paw Wash, LLC, seeking a declaratory judgment holding that they are not infringing on The Paw Wash's patent. They also seek damages and injunctive relief against The Paw Wash's claims that they are infringing on the Paw Wash patent. The Paw Wash asserted various counterclaims, including that *res judicata* bars the action in this Court, and a declaration that its patent is valid. The Paw Wash now moves for summary judgment. For the reasons set forth below, the Court grants The Paw Wash's Motion for Summary Judgment.

## I. The Material Undisputed Facts

The Paw Wash, LLC is a Missouri company that is in the business of canine hygiene products. (Pl. 56.1 Resp. ¶ 1).[1] In particular, The Paw Wash manufactures a product called Paw Wash, which is a device for cleaning dirty dog feet.[2] Pet Product Innovations, LLC, is an Illinois corporation. (*Id.* ¶ 2). Pet Product Innovations is the manufacturer of the Paw Plunger, which was previously produced by Paw Plunger, LLC. (*Id.* ¶ 24). Zeus & Company Pet Supply Distributors is an Illinois corporation that distributes goods in the pet supply market. (*Id.* ¶ 3).

On February 8, 2005, the United States Patent and Trademark Office issued U.S. Patent No. 6,851,391 (hereafter "the 391 Patent"). (*Id.* ¶ 7). The 391 Patent covers an apparatus and method for cleaning animal paws. The Paw Wash owns the 391 Patent. (*Id.* ¶ 9). This includes the right

---

[1] The parties have filed their Statements of Material Facts pursuant to Local Rule 56.1. The Plaintiffs's Response to the Defendant's Statement of Material Facts is referred to as "Pl. 56.1 Resp." The Defendant's Reply to the Plaintiffs's Statement of Additional Facts is referred to as "Def. 56.1 Reply."

[2] Surprisingly, in their Rule 56.1 statements of material facts, neither party actually states what their product is or what it does. The Plaintiffs's Complaint (Doc. 9) and the Defendant's Answer (Doc. 18) provide many of the facts about what the products are and how they function.

to bring suit for injunctive relief and damages resulting from the infringement of the patent. (*Id*.) On February 15, 2008, The Paw Wash filed suit against Paw Plunger, LLC in the United States District Court for the Western District of Missouri. (*Id*. ¶ 11). The Paw Wash alleged that Paw Plunger, LLC was infringing on the 391 Patent by its manufacture and sale of another paw cleaning device called the Paw Plunger. (*Id*. ¶ 12).

The case of *Paw Wash, LLC v. Paw Plunger, LLC*, No. 08-0113-CV-W-GAF (W.D. Mo. Feb. 15, 2008), was resolved pursuant to a settlement agreement on June 27, 2008, when the parties submitted a Stipulated Order of Dismissal to the District Court. (*Id*. ¶ 13). On June 30, 2008, the case was officially dismissed. (*Id*.). The Stipulated Order of Dismissal "ordered, adjudged, and decreed" a judgment in favor of The Paw Wash. (*Id*. ¶ 14). The District Court's order states that the 391 Patent is valid and enforceable, and that claim 17 of the patent was infringed by Paw Plunger, LLC through the manufacture and sale of the Paw Plunger device. (*Id*.). Pet Product Innovations disputes that the 391 Patent is valid and enforceable. They do not cite anything in the record to support this contention, except for their Answer to The Paw Wash's Affirmative Defense that the patent is valid. An adequate denial of fact requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). The Court therefore concludes that the 391 Patent is valid and enforceable under the patent laws of the United States. The Order also states that it "represents a final adjudication of all claims, counterclaims and defenses which were or could have been made in this action...with respect to the 391 Patent...(and any other product that has insubstantial differences and/or which comes within the scope of the 391 Patent)...All such claims and counterclaims are hereby dismissed with prejudice." (*Id*. ¶ 15).

After the litigation between the parties concluded, the two companies entered into a Settlement and License Agreement. (*Id*. ¶ 18). Paw Plunger, LLC failed to fulfill its obligations under the Agreement, so on August 25, 2011, The Paw Wash reopened its lawsuit in the Western District of Missouri as *The Paw Wash, LLC v. Paw Plunger, LLC*, No. 08-0113-CV-W-GAF (W.D. Mo. Feb. 15, 2008). (*Id*. ¶ 19). On November 15, 2011, The Paw Wash prevailed in its suit by obtaining an Order from the District Court permanently enjoining Paw Plunger, LLC from manufacturing or selling its Paw Plunger product. (*Id*. ¶ 20).[3]

In September 2011, Pet Product Innovations, LLC incorporated as an Illinois corporation. (*Id*. ¶ 21). Shortly thereafter, Pet Product Innovations executed an Asset Purchase Agreement with Paw Plunger, LLC to purchase all of Paw Plunger, LLC's assets. (*Id*. ¶ 22). Under the terms of that Agreement, Pet Product Innovations took ownership of all of Paw Plunger, LLC's existing inventory of the Paw Plunger; the molds used to manufacture the Paw Plunger; and the registered trade name "Paw Plunger." (*Id*. ¶ 23). Using the assets it obtained from Paw Plunger, LLC, Pet Product Innovations continues to manufacture and sell the same infringing Paw Plunger device earlier sold by Paw Plunger, LLC.[4] (*Id*. ¶ 24). Pet Product Innovations sells the paw washing product under the

---

[3]Paw Plunger, LLC subsequently filed a motion to reconsider the injunction Order. On February 7, 2012, while The Paw Wash's Motion for Summary Judgment was pending before this Court, the Missouri court denied Paw Plunger, LLC's Motion to Reconsider. *See The Paw Wash, LLC v. Paw Plunger, LLC,* No. 08-0113-CV-W-GAF (W.D. Mo. Feb. 15, 2008) (Doc. 39).

[4]Pet Product Innovations disputes this fact but does not cite to any record evidence to support its dispute. An adequate denial requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

registered trade name "Paw Plunger."[5] (*Id.* ¶ 25). This is the same name originally registered to, and used by, Paw Plunger, LLC. (*Id.*). Zeus & Company Pet Supply Distributors, Inc. is the exclusive distributor of the Paw Plunger product that is now manufactured by Pet Product Innovations.[6] (*Id.* ¶ 28).

Pet Product Innovations does not employ any former Paw Plunger, LLC employees. (*Id.* ¶

---

[5]Pet Product Innovations disputes this fact. It claims that it sells three different Paw Plungers: Paw Plunger I; Paw Plunger II; and Paw Plunger III. The only evidence that Pet Product Innovations offers as support for this claim is the Declaration testimony of David Levy, a managing member and vice president of Pet Product Innovations. The testimony of an interested party to a suit, without any corroborating evidence or documentary support to substantiate the testimony, fails to raise a materially disputed issue of fact. See *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). Pet Product Innovations does not offer any evidence to support its claim that there are really three different Plungers, nor do they introduce any evidence to show that the alleged Plungers II or III differ in structure or function from the Paw Plunger. A review of the Paw Plunger website shows that there are three sizes of Paw Plungers; a small, a medium, and a large–and it is possible that this is what Pet Product Innovations is referring to as the different plungers. *See* http://www.pawplunger.com (last visited April 6, 2012). "Under the law of the Federal Circuit, an infringement claim in a second suit is the 'same claim' as in an earlier infringement suit if the accused products in the two suits are essentially the same." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1379 (Fed. Cir. 2008) (internal citations and quotations omitted). Accused products are essentially the same for *res judicata* purposes where the only differences between them are "merely colorable" or "unrelated to the limitations in the claim of the patent." *See Id.* (citing *Accumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) and *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001)). Here, Pet Product Innovations asserts only that it manufactures three different models of the Paw Plunger. (Def 56.1 Reply ¶ 43). The Paw Wash responds by asserting that the Complaint indicates only one model of the Paw Plunger exists. (*Id.*). The Paw Wash also points out that the website also shows that just one model of the Paw Plunger exists. (*Id.*). Though differing sizes exist, The Paw Wash argues that there is no material difference in structure or functionality from the original Paw Plunger. (*Id.*). The Court concludes that The Paw Wash has demonstrated that the products are essentially the same and that any difference between them does not relate to the limitations in the claim of the patent.

[6]Zeus attempts to dispute that it is the exclusive distributor of the Paw Plunger. However, Zeus does not cite anything to support this proposition. Furthermore, Zeus's sworn Amended Complaint states unequivocally that "Zeus is the exclusive distributor of the Paw Plunger pet paw washer." (Doc. 9 ¶ 10)

5

32). Pet Product Innovations uses a different factory to manufacture its Paw Plunger devices than Paw Plunger, LLC used. (*Id.* ¶ 33). On or about November 4, 2010, Zeus began its business relationship with Paw Plunger, LLC. (*Id.* ¶ 34). Zeus began its business relationship with Pet Product Innovations on or around October 3, 2011. (*Id.* ¶ 38). Zeus no longer purchases any Paw Plunger devices from Paw Plunger, LLC. (*Id.* ¶ 37). Pet Product Innovations does not have a formal distribution agreement with Zeus, despite the fact that Zeus is the exclusive distributor of Pet Product Innovations's Paw Plunger product. (*Id.* ¶ 41).

Pet Product Innovations and Zeus brought suit in this Court seeking a declaratory judgment that they do not infringe the 391 Patent. (Doc. 1, Amended at Doc. 9). Pet Product Innovations and Zeus also seek damages and injunctive relief as a result of Paw Wash's alleged false assertions about the 391 Patent. (*Id*). The Paw Wash filed an Answer, asserted affirmative defenses against Pet Product Innovations and Zeus's claims, and filed counterclaims against Pet Product Innovations and Zeus. (Doc. 18). Among its affirmative defenses, The Paw Wash asserts that the Plaintiffs's suit is barred by *res judicata* (*Id.* at pg. 4). As counterclaims, The Paw Wash seeks a declaratory judgment in its favor declaring, *inter alia*, that the Plaintiffs are estopped from challenging the validity of the 391 Patent; declaring that they are estopped from claiming that the Paw Plunger does not infringe on the 391 Patent; enjoining Plaintiffs from manufacturing, using, or selling the Paw Plunger; and declaring the 391 Patent valid. (*Id.* at pg. 10).

## II. The Standard of Review and Choice of Law

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether

a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, on summary judgment the Court will limit its analysis of the facts to that evidence that is supported by the parties' Local Rule 56.1 statements properly before the Court. *See Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000).

When a cause of action arises under federal law, choice of law principles dictate that a district court should look to the law of the applicable regional circuit–in this case, the Seventh Circuit. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007); *County Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 733 (7th Cir. 2007). There are exceptions to this general rule. Where the issue in a suit is peculiar to patent law it may be appropriate to look instead to the law of the Federal Circuit. *See Transclean Corp.*, 474 F.3d at 1304 (holding that res judicata is not peculiar to patent law, and therefore looking to the law of the applicable regional circuit is appropriate). In deciding whether to apply the law of the relevant territorial circuit or the law of the Federal Circuit, a court should look to the well-pleaded complaint to determine whether the cause of action is created by federal patent law. *See County Materials Corp.*, 502 F.3d at 733. A cause of action is created by federal patent law if patent law is a necessary element of the claim. *See id.*

Here, the Court must look to the counterclaims asserted by The Paw Wash, because it is those claims that require resolution at this stage in the litigation. The Paw Wash's claims essentially boil down to *res judicata*. To resolve the issue of whether this suit is barred by the prior suit, the Court will have to resolve whether the Stipulated Order was a final judgment; whether the parties are in privity; and whether this suit seeks redress for a claim that has already been adjudicated in a prior

7

suit. These issues are not peculiar to patent law. *See Translucent Corp*, 474 F.3d at 1304. Thus, for the most part, it is the law of the Seventh Circuit that governs resolution of the Defendant's Motion for Summary Judgment. The Seventh Circuit regularly decides *res judicata* issues, even when those principles are to be applied to patent cases. *See, e.g., Allan Block Corp. v. County Materials Corp.*, 512 F.3d 912, 915 (7th Cir. 2008). Nor is the law of successor liability, privity, or the finality of consent decrees peculiar to patent law–even when they arise in the patent context. The effect of a consent decree regarding the *validity* of a patent is a question of law that *is* peculiar to patent law, and therefore the Court will look to the law of the Federal Circuit. Likewise, contributory infringement and induced infringement are doctrines unique to patent law, and the Court will accordingly look to the law of the Federal Circuit. The Court takes note of the fact that the underlying issues in this suit involve claims that arise under federal patent law. If resolution of those claims becomes necessary, the Court will look to, and apply, the law of the Federal Circuit. Even where an issue involves matters that are closely related to patent law, the Court will examine the law of the Federal Circuit to ensure that there is no division of authority in the relevant case law.

### III. Discussion

The Paw Wash claims that *res judicata* bars Pet Product Innovations from relitigating the validity of the 391 Patent in this Court because the District Court for the Western District of Missouri already rendered a final judgment on the merits in a suit with an identical cause of action, and with an identity of parties or their privies. Under the doctrine of *res judicata,* a party to an action that was adjudicated to a final judgment on the merits cannot relitigate issues that were, or could have been, raised in the original suit. See *Highway J Citizens Group v. United States DOT*, 456 F.3d 734, 741 (7th Cir. 2006); *Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.*,

8

296 F.3d 624, 628 (7th Cir. 2002); *accord Gillig v. Nike, Inc.*, 602 F.3d 1354, 1361 (Fed. Cir. 2010), (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine requires the party moving on *res judicata* grounds to establish three things: that (1) a court with proper jurisdiction and authority rendered a conclusive and final judgment; (2) the cause of action is the same as that which was previously adjudicated; and (3) the parties to both suits are either the same, or in privity with each other. *See Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 647 (7th Cir. 2011); *Highway J Citizens Group*, 456 F.3d at 741; *Hunt Truck Lines*, 296 F.3d at 628; *Gillig*, 602 F.3d at 1361.

The threshold issue is whether the Stipulated Order of Dismissal in the Missouri case constitutes a final judgment. Where a settlement agreement is part of a court order such that compulsory compliance is court-ordered, and where the court's approval is necessary to the settlement and the court retains jurisdiction to enforce it, a settlement agreement is the functional equivalent of a consent decree. *See T.D. v. La Grange Sch. Dist. No. 102*, 349 F.3d 469, 477-478 (7th Cir. 2003). Here, the Stipulated Order makes reference to the settlement agreement, requires the parties to carry out that agreement, and requires the court to retain jurisdiction to enforce the agreement. Furthermore, the Stipulated Order from the Missouri court "decreed" the findings of the court and the obligations of the parties pursuant to settlement. Thus, the Stipulated Order of Dismissal constitutes a consent decree. *See T.D.*, 349 F.3d at 477-478.

A consent decree regarding the validity of a patent is considered to be a final judgment on the merits for the purposes of *res judicata*, when the decree is clear and unambiguous. *See Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1361 (Fed. Cir. 2010) (holding that language of a settlement agreement or decree must clearly state whether a patent is valid, and that for *res judicata* to apply, infringement or invalidity must have been at issue in the prior suit); *Flex-Foot, Inc. v. CRP, Inc.*, 238

9

F.3d 1362, 1370 (Fed. Cir. 2001) (where the parties had an opportunity to dispute validity, enforcement of a subsequent agreement regarding validity is supported by the strong policy in favor of enforcing settlement agreements and *res judicata*); *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 474-75 (Fed. Cir. 1991) (where litigation ends in a consent decree acknowledging a patent's validity, the strong preference in favor of preserving finality weighs in favor of enforcing the consent decree). So long as a court has competent jurisdiction over the subject matter involved in a consent decree between two parties, the decree is as binding and final between the parties as if the action had been adversarial. *See Rockwell Graphic Sys. v. DEV Indus.*, 91 F.3d 914, 919 (7th Cir. 1996) (a consent decree can even be binding on nonparties to the original dispute that gave rise to the decree); *Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335, 337 (7th Cir. 1969) (a consent decree is binding and conclusive on parties, even without any "ascertainment by the court of the truth of the facts averred" and where the proceedings are not adversarial). A consent decree is a final judgment, conclusive on the litigants as to all issues of law or fact that were, or could have been, litigated. See *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 745 F.2d 441, 452 (7th Cir. 1984).

The Stipulated Order of Dismissal states that it is "a final adjudication of all claims in the lawsuit." Furthermore, the Missouri court dismissed every claim *with prejudice*. Validity of the 391 Patent was at issue in the Missouri suit. Furthermore, the decree entered by the Missouri court unambiguously states that the 391 Patent is valid and enforceable. After the parties in the Missouri action entered into the Settlement Agreement, Paw Plunger, LLC failed to abide by its terms. Therefore, The Paw Wash reopened the litigation in order to void the Agreement and obtain a permanent injunction against Paw Plunger, LLC. The Paw Wash was successful, and it obtained an injunction prohibiting Paw Plunger, LLC from continuing to manufacture or sell the Paw Plunger.

10

The injunction Order is now a final judgment, as the Missouri court declined to reconsider its ruling that Paw Plunger, LLC is enjoined from manufacturing and selling the infringing Paw Plunger.

The issues raised by Pet Product Innovations, namely the validity of the 391 Patent, are the same as those that were previously decided by the District Court in Missouri. In its counterclaim in the Missouri law suit, Paw Plunger, LLC sought a declaration regarding the validity of the patent that is identical to the declaration that Pet Product Innovations now seeks in this Court. The product that was at issue in the Missouri case is the same product at issue here: the Paw Plunger. Pet Product Innovations took ownership of Paw Plunger, LLC's inventory of Paw Plungers, the molds used to make the Plungers, and the trademark name "Paw Plunger." It is currently producing and selling Paw Plunger devices. Pet Product Innovations argues that it sells an "apparatus" and that it therefore cannot infringe on the method claim that The Paw Wash successfully litigated in the prior suit. But this is not correct. Under the doctrines of contributory infringement and induced infringement, a manufacturer or seller can infringe on a patent in the sale of a product that has a method claim. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (holding that an apparatus can infringe on a method claim where the apparatus was "especially made or especially adapted for practicing the claimed method"); *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (contributory infringement can be found where a product infringes on a method claim, even where the infringer embeds the infringing product into a larger apparatus). Therefore, the cause of action that Pet Product Innovations is asking this Court to decide is the same as the cause of action that was previously decided by the District Court in Missouri.

Nor can Pet Products Innovations argue that, as the successor company, it is not bound by the Order. A consent decree or an injunction "may bind nonparties who are successors in interest

11

to parties named in the injunction [or consent decree] with respect to the subject matter of the injunction" or consent decree. *Rockwell Graphic Sys.*, 91 F.3d at 919 (holding a privy to the preclusive effect of a previously entered injunction). Two companies are in privity when one sells its assets to another, and the purchaser then uses those assets to continue manufacturing and selling the seller's products. See *American Equipment Corp. v. Wikomi Mfg. Co.*, 630 F.2d 544, 545 (7th Cir. 1980) (where party sold its tools, designs, and technical information to a buyer, the buyer was a privy of the seller and precluded from relitigating patent consent decree action by the doctrine of *res judicata*; consent decree regarding patent validity was held binding on the privy); *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 25 (7th Cir. 1977) (after a permanent injunction was issued against manufacturer of an infringing product, manufacturer sold the corporate assets to a buyer, the buyer was in privity with the seller and thus bound to the prior court's injunction); *Brunswick Corp.*, 408 F.2d at 338 (after admitting infringement and entering into a consent decree, company sold its assets to a purchaser, who was held to be bound by the consent decree); *J. R. Clark Co. v. Jones & Laughlin Steel Corp.*, 288 F.2d 279, 280 (7th Cir. 1961) (where a company sold the part of business relating to an infringing product to a buyer, the buyer was held to be in privity with the seller and bound to the finding of infringement). Such a purchaser is a successor-in-interest to the seller and is in privity with the seller. See *Panther Pumps*, 556 F.2d at 24. Pet Product Innovations admits to having purchased all of Paw Plunger, LLC's assets. It also admits that it continued to sell the Paw Plunger. Pet Product Innovations purchased the existing inventory, molds, and trademarks of Paw Plunger, LLC. Pet Product Innovations is currently using the acquired assets to continue manufacturing and selling the Paw Plunger product, under the trade name "Paw Plunger." Pet Product Innovations is in privity with Pet Plunger, LLC. Pet Product Innovations is

12

therefore bound to the Stipulated Order stating that the patent is valid, and is subject to the permanent injunction entered by the Missouri court enjoining the infringement of the 391 Patent and the continuing manufacture and sale of Paw Plunger products.

Pet Product Innovations argues that because it does not employ Paw Plunger, LLC's prior employees and because they do not share a common ownership, they are therefore not in privity with Paw Plunger, LLC. But this is not the legal standard by which privity is measured. Where a company sells its entire business to another company in connection with an infringing product, the two remain in privity for the purposes of *res judicata*. *See Wikomi Mfg. Co.*, 630 F.2d at 545 (7th Cir. 1980); *Panther Pumps*, 566 F.2d at 25 (7th Cir. 1977); *Brunswick Corp.*, 408 F.2d at 338; *J. R. Clark Co.*, 288 F.2d at 280 (7th Cir. 1961); *accord Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) (where one party enjoys the benefits or suffers the burdens that a judgment would produce against another company, the two are so closely connected as to be in privity with one another). In this line of cases, the Seventh Circuit has made it clear that the purchaser of a company's assets may be in privity with the seller, even without common ownership.

Privity also exists between a distributor of infringing products and a manufacturer who was previously found to be infringing on a patent by manufacturing those products and subsequently enjoined from selling them. See *Transclean Corp. v. Jiffy Lube Int'l, Inc.,* 474 F.3d 1298 (Fed. Cir. 2007) (privity found to exist between seller and subsequent purchasers, under Federal Circuit law due to absence of Eighth Circuit authority; otherwise, the question of privity is one to be answered by the territorial circuit); *TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 317-318 (7th Cir. 1974) (manufacturer that sold product to a distributor that was previously found to be infringing on a patent was also bound by the finding of infringement). Zeus is the "exclusive distributor of the Paw

13

Plunger paw washer." Paw Plunger, LLC was in privity with Zeus. Pet Product Innovations is also in privity with Zeus. A final judgment was entered in Missouri in favor of The Paw Wash and against Paw Plunger, LLC. The Stipulated Order of Dismissal and the Order of injunction are final and conclusive judgments that are binding on the parties and their privies. Because Zeus was a privy of Paw Plunger, LLC and continues to be in privity with Pet Product Innovations, it is precluded from relitigating the claims that were already reduced to final judgement in the previous suit.

The Court finds that a final and conclusive judgment was entered against Paw Plunger, LLC in the Missouri District Court. The Missouri court found that The Paw Wash's 391 Patent was valid and that Paw Plunger, LLC was infringing on that patent. Subsequent to the Stipulated Order of Dismissal, Paw Plunger, LLC was permanently enjoined from manufacturing or selling the Paw Plunger device. Paw Plunger, LLC is in privity with Pet Product Innovations, having acquired all of the assets of Paw Plunger, LLC. In addition Paw Plunger, LLC was in privity with Zeus and Pet Product Innovations is now in privity with Zeus, as the exclusive distributor of its products. Pet Product Innovations and Zeus brought suit in this Court seeking to have The Paw Wash's patent declared invalid. The Missouri District Court previously held that the patent is valid and enforceable. Therefore, Pet Product Innovations, as a privy of Paw Plunger, LLC, cannot bring a cause of action in this Court because the issues in this case have already been decided by a court of competent jurisdiction and reduced to final judgment. The same is true of Zeus. The doctrine of *res judicata* bars the instant action brought by Pet Product Innovations and Zeus against The Paw Wash. Furthermore, because Pet Product Innovations is in privity with Paw Plunger, LLC, the injunction entered by the Missouri court against Paw Plunger, LLC also applies to Pet Product Innovations. *See Nat'l Spiritual Assembly of the Bahá'ís of the United States Under the Hereditary Guardianship,*

*Inc. v. Nat'l Spiritual Assembly of the Bahá'ís of the United States, Inc.*, 628 F.3d 837, 848-849 (7th Cir. 2010) ("It is generally accepted that an injunction may be enforced against a nonparty in 'privity' with an enjoined party."). The District Court for the Western District of Missouri having already enjoined Paw Plunger, LLC from manufacturing, using, importing, offering to sell, or selling the Paw Plunger, this Court now applies that injunction to Pet Product Innovations and enjoins it from manufacturing, using, importing, offering to sell, or selling the Paw Plunger.

## IV. Conclusion

For the reasons set forth above, Pet Product Innovations and Zeus are precluded by *res judicata* from maintaining the current cause of action against The Paw Wash. Pet Product Innovations, as a privy of Paw Plunger, LLC, is subject to the injunction Order entered in Missouri, and it is enjoined from manufacturing or selling the Paw Plunger. The Paw Wash is entitled to an entry of summary judgment against Pet Product Innovations and Zeus.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 5, 2012